## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

JOAN WILLIAMS,
                    Appellant,

            v.

DEPARTMENT OF DEFENSE,
                    Agency.

DOCKET NUMBER
DC-1221-23-0592-W-1

DATE: August 26, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

Joan Williams, FPO, AE, pro se.

Maxwell Selz and Jonathan Beyer, APO, AE, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner recused himself and
did not participate in the adjudication of this appeal.

### REMAND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review,

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

VACATE the initial decision, and REMAND this appeal to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2 The agency employed the appellant as a Guidance Counselor at Naples Middle School/High School in Naples, Italy. Initial Appeal File (IAF), Tab 1 at 1, 7, 17. On March 4, 2022, the agency issued her a Notice of Termination During Trial Period. *Id.* at 9. Four days later, on March 8, 2022, the agency rescinded the termination and reinstated the appellant to her former position. *Id.* at 11, 20.

¶3 On March 20, 2023, the appellant filed a whistleblower retaliation complaint with the Office of Special Counsel (OSC) alleging that the agency was retaliating against her for making protected disclosures, including by terminating her employment. *Id.* at 4, 14, 19-20, 26. On May 16, 2023, OSC notified the appellant that it had terminated its inquiry into her allegations and of her right to seek corrective action from the Board. *Id.* at 26. On July 10, 2023, the appellant filed an IRA appeal with the Board, again challenging her termination and alleging gross negligence and due process violations by the agency. *Id.* at 3. She also asserted, without specifics, that the agency had violated veterans' preference requirements. *Id.* at 5. The administrative judge issued an order which set forth the appellant's burden to establish jurisdiction over an IRA appeal and ordered her to present evidence and argument on the jurisdictional issue. IAF, Tab 3. The appellant did not respond to the administrative judge's order. In response, the agency argued that the appeal should be dismissed for lack of jurisdiction. IAF, Tab 6 at 4. The administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction on the basis that the appellant's description of her disclosures was too vague to meet the nonfrivolous pleading standard. IAF, Tab 7, Initial Decision (ID) at 4-6.

¶4      The appellant has filed a timely petition for review in which she provides additional details in support of her claims. Petition for Review (PFR) File, Tab 1. The agency has responded to the petition for review. PFR File, Tab 5. On review, the appellant provides a narrative timeline and documentation in support of her allegations of whistleblower reprisal. PFR File, Tab 1 at 6-39. She alleges that, in retaliation for her disclosures and activity, agency officials took a number of actions against her between January 2022 and June 2023, including issuing her the March 4, 2022 termination notice. *Id.* at 7-14.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶5      The Board has jurisdiction over an IRA appeal if the appellant has exhausted her administrative remedies before OSC and makes nonfrivolous allegations that (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined under 5 U.S.C. § 2302(a).[2]  *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016).

The appellant demonstrated by preponderant evidence that she exhausted some, but not all, of her claims before OSC.

¶6      The administrative judge did not address whether the appellant exhausted her allegations of whistleblower reprisal before OSC. Instead, the administrative judge held that the content of the appellant's alleged protected disclosures was "far too vague, unsupported, and constitute mere pro forma allegations." ID at 4. He based his conclusion on the appellant's only description of her disclosures below, which came from the OSC complaint she attached to her initial appeal.

---

[2] The appellant does not reassert her claims of gross negligence and due process violations on review. IAF, Tab 1 at 3. The Board lacks jurisdiction over these claims in an IRA appeal, and therefore we decline to consider them further. *See Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 15 (2016) (determining that the Board does not have jurisdiction to hear a claim of harmful procedural error in the context of an IRA appeal).

IAF, Tab 1 at 19. In her OSC complaint, she described her disclosures as "concerns related to professional practices not followed by administrators that impact students as it relates to student records, violation of policy, [and] unfair advantage." *Id.*

¶7 Although we discern no error in the administrative judge's reasoning, the appellant has presented more specific allegations on review concerning her disclosures. *See Schmittling v. Department of the Army*, 219 F.3d 1332, 1336-37 (Fed. Cir. 2000) (explaining that, in an IRA appeal, the Board may find it lacks jurisdiction based on an appellant's failure to meet any one of the jurisdictional prerequisites); *see also Gabel v. Department of Veterans Affairs*, 2023 MSPB 4, ¶ 6 (finding that a nonfrivolous allegation of a protected disclosure must be specific and detailed rather than a vague allegation of wrongdoing). On review, she expands upon the allegations that she made below, and she submits documents, most of which were not in the record below. Jurisdiction may be raised at any time. *Pirkkala v. Department of Justice*, 123 M.S.P.R. 288, ¶ 5 (2016). Therefore, we have considered the appellant's new arguments and evidence to the extent that they impact the Board's jurisdiction over this appeal. *See id.* Because we are considering the appellant's submissions based on their jurisdictional implications, we need not resolve the parties' arguments on review as to whether she exercised due diligence in presenting this information below. PFR File, Tab 1 at 4-5, Tab 5 at 5-6.

¶8 The appellant identifies four specific putative disclosures on review, as follows.[3] She alleges that, in September 2021, a colleague improperly acted as an Advanced Placement (AP) Coordinator against agency policy, and improperly asked the appellant to sign documents as the AP Coordinator. PFR File, Tab 1 at 6. She also claims that, in January 2022, a teacher asked her to "change [a] student['s] historical record (transcript) which would result in a student receiving

[3] In light of the appellant's pro se status, we have interpreted her arguments in the light most favorable to her. *See Miles v. Department of Veterans Affairs*, 84 M.S.P.R. 418, ¶ 10 (1999).

an unfair advantage (weighted [grade point average (GPA)]).” *Id.* at 8-9. She further alleges that, in February 2022, the school Principal asked her to change his daughter’s schedule without following the agency’s procedures for such a request. *Id.* at 9. Finally, according to the appellant, in February 2023, the Principal “threatened [her] with administrative action” after insisting that she “use forms and documents not approved by the [Overseas Federation of Teachers (OFT)] in compliance with [the agency’s] Collective Bargaining Agreement (CBA).” *Id.* at 13.

¶9 Because we consider these jurisdictional allegations for the first time here, we start with the issue of whether the appellant proved exhaustion of her OSC remedy. An appellant must prove exhaustion by preponderant evidence. 5 U.S.C. § 1214(a)(3); *Cooper v. Department of Veterans Affairs*, 2023 MSPB 24, ¶ 5; 5 C.F.R. § 1201.57(c). Preponderant evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

¶10 Although the Board’s jurisdiction over an IRA appeal is limited to those issues that have been previously raised with OSC, the appellant may provide a more detailed account of her whistleblowing before the Board than she did to OSC. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10 (citations and internal quotations omitted). The substantive requirements of exhaustion are met when an appellant has provided OSC with sufficient basis to pursue an investigation. *Id.* An appellant may demonstrate exhaustion through her initial OSC complaint, correspondence with OSC, or through other sufficiently reliable evidence. *Id.*, ¶ 11.

¶11 We conclude that the appellant exhausted three of the four specific purported disclosures she identifies on review. As detailed above, the appellant alleged to OSC that she disclosed “a series of concerns related to professional practices not followed by administrators that impact students as it relates to

student records, violation of policy, [and] unfair advantage." IAF, Tab 1 at 19-20. She further alleged that, in response to these disclosures, the agency initially terminated her. *Id.* at 20. Although the agency rescinded her termination 4 days later, she alleged that the agency then took the following actions against her: (1) reassigned her; (2) created a hostile work environment; (3) placed her on an improvement plan; and (4) changed her duties/working conditions. *Id.* at 20-21. In OSC's closeout letter, which the appellant provided for the first time on review, OSC explained that, in correspondence with the appellant that does not appear in the record, she shared "several instances of the agency manipulating student's [sic] permanent education records" and that the agency "threatened [her] with administrative action after insisting that [she] use forms that had not been approved." PFR File, Tab 1 at 15.

¶12     We find that the appellant's allegations to OSC could have led to an investigation of her putative disclosures that a teacher asked her to change a student's transcript in January 2022, the following month the Principal asked her to change his daughter's schedule, and, in February 2023, the Principal insisted that the appellant use forms that were not OFT-approved. *Id.* at 8-9, 13. Each of these alleged disclosures concerns the use of improper forms or manipulation of student records, matters that the appellant raised with OSC. *Id.* at 15.

¶13     However, the appellant did not exhaust one of her purported disclosures. According to the appellant, in September 2021, she disclosed that the agency violated the policies of OFT, an agency-endorsed non-profit, when an individual acted in the role of AP Coordinator while serving as an AP Government teacher and asked the appellant to do the same despite the appellant's daughter's enrollment in AP classes. *Id.* at 6. The appellant has not alleged that this disclosure concerned improperly changing records or using improper forms. *Id.* Because the appellant did not provide OSC with a sufficient basis to pursue an investigation into this disclosure, she has not proven by preponderant evidence

that she exhausted this allegation before OSC. *See Chambers*, 2022 MSPB 8, ¶ 10.

¶14 As to the alleged personnel actions, the appellant did not exhaust with OSC her reassignment from serving high school students to serving middle school students. PFR File, Tab 1 at 13-14. This action allegedly took place in June 2023, after OSC had closed out its investigation. *Id.* at 13, 15-17. Therefore, the Board lacks jurisdiction over this reassignment.

The appellant established jurisdiction over her IRA appeal.

¶15 A nonfrivolous allegation of a protected whistleblowing disclosure is an allegation of facts that, if proven, would show that the appellant disclosed a matter that a reasonable person in her position would believe evidenced one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8). *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 8 (2013); 5 C.F.R. § 1201.4(s); *see Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1368-69 (Fed. Cir. 2020) (quoting 5 C.F.R. § 1201.4(s) and other sources as supporting the proposition that, in determining whether an allegation is nonfrivolous, the Board may not weigh the agency's contrary evidence).

> *The appellant's allegations of agency wrongdoing in February 2022 and February 2023, unaccompanied by disclosures, are not protected.*

¶16 As discussed above, the appellant argues that she disclosed wrongdoing in February 2022. PFR File, Tab 1 at 9. Specifically, she claims that the Principal directed her to remove a course from his daughter's schedule outside of the deadline designated by Department of Defense Education Activity (DODEA) Instruction 1367.01 (Instruction 1367.01). *Id.*; DODEA, Administrative Instruction 1367.01: High School Graduation Requirements and Policy (July 27, 2021) https://www.dodea.edu/regulation/high-school-graduation-requirements-and-policy (last visited Aug. 26, 2024); *see Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶ 19 n.3 (2016) (taking official notice of an agency

directive available on the internet). The appellant does not allege that she disclosed to anyone that the Principal's actions violated Instruction 1367.01 or were otherwise improper. Rather, she asserts that she responded to the Principal and others via email, notifying them of the proper process for modifying a student's schedule. PFR File, Tab 1 at 9. Similarly, the appellant has not nonfrivolously alleged that she made a protected disclosure in February 2023 to the Principal that he had ordered her to use forms that were not approved by OFT or in violation of the CBA. Although she alleges that she was threatened with administrative action for declining to use forms, she does not allege that she advised anyone that use of the forms was wrongful. *Id.* at 13.

> *The appellant established jurisdiction over her January 2022 disclosure.*

¶17    As discussed above, the appellant also alleges that a teacher requested that the appellant change a student's transcript. *Id.* at 8. According to the appellant, she declined to make the change, notifying the teacher that granting the request at that time would impact the student's GPA in violation DODEA Administrative Instruction 1367.01. *Id.* at 8-9.

¶18    We find that the appellant has made a nonfrivolous allegation that she reasonably believed that her statement to her coworker evidenced potential wrongdoing. An appellant is not required to identify the particular statutory or regulatory provision that the agency allegedly violated when her statements and circumstances of those statements clearly implicate an identifiable law, rule, or regulation. *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 17 (2011). Although the appellant has not identified the specific provision, she may have been alluding to section 5.1 of Instruction 1367.01. That section dictates the process for calculating students' GPAs. The appellant may reasonably have believed that altering a student's GPA was inconsistent with the process or with the stated purpose of the process of ensuring that "[t]he GPA for all students is calculated on an equitable basis."

¶19 Further, an appellant is not required to correctly label the category of wrongdoing. *El v. Department of Commerce*, 123 M.S.P.R. 76, ¶ 11 (2015), *aff'd per curiam*, 663 F. App'x 921 (Fed. Cir. 2016). Therefore, we have also considered whether she might reasonably have believed that her disclosure evidenced an abuse of authority, one of the categories of wrongdoing identified in 5 U.S.C. § 2302(b)(8). An abuse of authority occurs when there is an "[a]rbitrary or capricious exercise of authority that is inconsistent with the [agency's] mission." *Smolinski v. Merit Systems Protection Board*, 23 F.4th 1345, 1352 (Fed. Cir. 2022) (quoting 10 U.S.C. § 2409(g)(6)(1), since transferred to 10 U.S.C. § 4701(g)(6)(1) (defining "abuse of authority" for purposes of whistleblower protections for Department of Defense and National Aeronautics and Space Administration contract employees); 41 U.S.C. § 4712(g)(1) (defining "abuse of authority" for purposes of whistleblower protections for Federal contract employees)). The appellant indicated in her petition for review that she believed that changing the student's transcript would result in an "unfair advantage (weighted GPA)." PFR File, Tab 1 at 8. Her allegations are sufficient to constitute a nonfrivolous allegation that she reasonably believed the teacher's request constituted an abuse of authority that was contrary to the DODEA's stated educational mission and emphasis on equity. *See* https://www.dodea.edu/about/blueprint-continuous-improvement (last visited Aug. 26, 2024).

¶20 Although the appellant did not allege that any wrongdoing had occurred at the time she spoke to the teacher in January 2022, her allegations are sufficient at the jurisdictional stage of this IRA appeal. The Board has found that an employee need not wait until an actual violation of law occurs for her disclosure to be protected under whistleblower reprisal statutes. *Covington v. Department of the Interior*, 2023 MSPB 5, ¶ 38. Such a requirement would mean losing an opportunity to avert wrongdoing and would have a chilling effect on whistleblowing. *Id.* When, as here, a disclosure concerns a potential violation of

law, as opposed to an event that has already taken place, an appellant must prove that she reasonably believed the potential wrongdoing was real and immediate. *Id.* In order to strike a balance between preventing Government wrongdoing on the one hand and encouraging "healthy and normal" discussions of "possible courses of action" that may avoid such wrongdoing on the other hand, the determination of whether the disclosure is protected "depends on the facts." *Id.* (quoting *Reid v. Merit Systems Protection Board*, 508 F.3d 674, 678 (Fed. Cir. 2007)). Therefore, the determination of whether an appellant reasonably believed the wrongdoing was real and immediate should be evaluated at the merits stage of an IRA appeal, and not at the jurisdictional stage. *Reid*, 508 F.3d at 678. Under the circumstances, we find that the appellant has nonfrivolously alleged that she reasonably believed when she made her disclosure to the teacher in January 2022 that the wrongdoing was real and immediate. Our conclusion is supported by her assertion on review that, notwithstanding her guidance, an Assistant Principal made the prohibited change to the student's transcript approximately 8 months later.[4] *Id.* at 9.

---

[4] The appellant also alleges for the first time on review that a colleague "asked for a racial breakdown of student data to be used in a training where if data was disaggregated it could identify students." PFR File, Tab 1 at 7. The appellant states that she "shared [her] discomfort with that and referred her to the District." *Id.* The appellant also states for the first time that the agency retaliated against her for an equal employment opportunity (EEO) complaint. *Id.* at 10-11. Disclosures of practices made unlawful by Title VII are not covered by 5 U.S.C. § 2302(b)(8). *McCray v. Department of the Army*, 2023 MSPB 10, ¶ 21 (stating that activity and disclosures protected under Title VII are not protected under 5 U.S.C. § 2302(b)(8)); *Edwards v. Department of Labor*, 2022 MSPB 9, ¶¶ 10-22 (explaining that 5 U.S.C. § 2302(b)(8) does not include disclosures of alleged wrongdoing under Title VII), *aff'd*, No. 2022-1967, 2023 WL 4398002 (Fed. Cir. July 7, 2023). Further, an appellant's own EEO complaint in which she does not seek to remedy reprisal for whistleblowing is not protected activity within the Board's IRA jurisdiction. *Edwards*, 2022 MSPB 9, ¶¶ 24-25 (finding that an appellant's complaints and disclosures to an agency's EEO office seeking to remedy purported Title VII retaliation were not within the purview of sections 5 U.S.C. § 2302(b)(9)(A)(i) or (b)(9)(B)); *see McCray*, 2023 MSPB 10, ¶¶ 26-30 (finding that an employee's pursuit of a grievance was not a protected activity under 5 U.S.C. § 2302(b)(9)(C) because so interpreting that provision would effectively subsume (b)(9)(A), which prohibits retaliation for the "exercise of any appeal, complaint, or grievance right

¶21     We next turn to whether the appellant has nonfrivolously alleged that her protected disclosure was a contributing factor in any of the alleged personnel actions. To satisfy the contributing factor criterion at the jurisdictional stage in an IRA appeal, an appellant need only raise a nonfrivolous allegation that the fact or content of the protected disclosure was one factor that tended to affect the personnel action in any way. *Abernathy v. Department of the Army*, 2022 MSPB 37, ¶ 15. One way to establish contributing factor is the knowledge/timing test, under which an employee may nonfrivolously allege that the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.* The knowledge portion of the knowledge/timing test can be met with allegations of either actual or constructive knowledge. *Id.* An appellant may establish an official's constructive knowledge of a protected disclosure by demonstrating that an individual with actual knowledge of the disclosure influenced the official accused of taking the retaliatory action. *Id.*

¶22     Here, the appellant alleges that, 8 months after she made her disclosure to a teacher that doing so was improper, the Assistant Principal changed the student's transcript. PFR File, Tab 1 at 9. The appellant implies that the Assistant Principal was aware of the appellant's disclosure when the Assistant Principal changed the student's transcript. *Id.* Any doubt or ambiguity as to whether the appellant made nonfrivolous jurisdictional allegations should be resolved in favor of finding jurisdiction. *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 6. Therefore, although the appellant has not explicitly claimed that the

---

granted by any law, rule, or regulation"). The appellant has not alleged that she sought to remedy whistleblower reprisal in her EEO complaint. Therefore, her allegations regarding disclosures of her colleague's request for information and her own EEO complaint do not confer Board jurisdiction over her appeal.

Assistant Principal learned of the appellant's disclosure, we conclude that she has nonfrivolously alleged that the Assistant Principal was aware of it.

¶23    The appellant alleged to OSC that the Assistant Principal was involved in the personnel actions taken against her.  IAF, Tab 1 at 20-21.  She has provided evidence on review that the Assistant Principal was present at the meeting at which the Principal presented the appellant with notice of her termination.  PFR File, Tab 1 at 19-20.  The appellant's averments constitute a nonfrivolous allegation of constructive knowledge, i.e., that the Assistant Principal influenced the Principal's decision to terminate the appellant's employment and take the other alleged personnel actions.

¶24    The Board has held that personnel actions occurring within 1 to 2 years after the protected disclosures are sufficient to meet the timing portion of the knowledge/timing test.  *Abernathy*, 2022 MSPB 27, ¶ 15.  All of the personnel actions that the appellant raised with OSC allegedly took place between her March 2022 termination and May 2023, when OSC closed its investigation into her complaint.  PFR File, Tab 1 at 17; IAF, Tab 1 at 20-21.  Because the appellant asserts that the agency took these actions within 2 years of her January 2022 disclosure, she has nonfrivolously alleged that she met the timing element of the knowledge/timing test.  Because the appellant has established jurisdiction over her appeal, she is entitled to her requested hearing on the merits.  IAF, Tab 1 at 2; *See Cooper*, 2023 MSPB 24, ¶ 22.

The appellant has not established jurisdiction over her allegation that the agency violated her veterans' preference rights.

¶25    The appellant alleged below, and reasserts on review, that the agency violated her veterans' preference rights.  IAF, Tab 1 at 5; PFR File, Tab 1 at 8.  The administrative judge acknowledged the claim and advised the appellant that she could file a separate appeal with the Board under the Veterans Employment Opportunities Act of 1998 (VEOA).  ID at 6 n.5.  The Board has jurisdiction over a VEOA appeal when an appellant has exhausted her administrative remedies with

the Department of Labor (DOL), makes a nonfrivolous allegation that she was a preference eligible, and nonfrivolously alleges that the agency violated a statute or regulation relating to veterans' preference. *Davis v. Department of Defense*, 2022 MSPB 20, ¶ 5 n.1.

¶26 The appellant indicated below that she has not filed a complaint with DOL. IAF, Tab 1 at 4. She does not state on review that she has cured this deficiency. If the appellant believes that she can establish jurisdiction over her claim that the agency violated her veterans' preference rights, she may file a new appeal with the regional office. We express no opinion on the timeliness of, or the Board's jurisdiction over, such an appeal.

## ORDER

¶27 For the reasons discussed above, we remand this case to the regional office for further adjudication of her IRA appeal in accordance with this Remand Order.


FOR THE BOARD: Gina K. Grippando

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.